# In the United States Court of Federal Claims
## OFFICE OF SPECIAL MASTERS
No. 20-206V
UNPUBLISHED

| | |
|---|---|
| JOHN DAVENPORT,<br><br>                Petitioner,<br>v.<br><br>SECRETARY OF HEALTH AND<br>HUMAN SERVICES,<br><br>                Respondent. | Chief Special Master Corcoran<br><br>Filed: November 8, 2023<br><br>Special Processing Unit (SPU); Entitlement to Compensation; Ruling on the Record; Findings of Fact; Influenza ("Flu"); Shoulder Injury Related to Vaccine Administration (SIRVA); |

*Leigh A. Finfer, Muller Brazil, LLP, Dresher, PA,* for Petitioner.

*Lauren Kells, U.S. Department of Justice, Washington, DC,* for Respondent.

### RULING ON ENTITLEMENT[1]

On February 26, 2020, John Davenport ("Petitioner") filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] (the "Vaccine Act"). Petitioner alleges that he suffered a shoulder injury related to vaccine administration ("SIRVA") caused by an influenza ("flu") vaccine administered on September 17, 2018. Petition at 1. The case was assigned to the Special Processing Unit of the Office of Special Masters. For the reasons set forth below, I find that Petitioner is entitled to compensation.

---

[1] In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2012).

I. **Relevant Procedural History**

More than a year after the claim's initiation, Respondent filed a status report stating that he was willing to engage in settlement discussions, but they did not succeed. On June 14, 2022, Petitioner was invited to file a motion for a ruling on the record with regard to entitlement. ECF No. 44.  Petitioner filed his motion on October 5, 2022. Motion for Ruling on the Record ("Mot."), ECF No. 49. Respondent opposed the motion on November 10, 2022, arguing that Petitioner had not established a Table claim because he had a history of left shoulder pain prior to his vaccination, and because his symptoms could be due to an alternative cause. Respondent's Response to Petitioner's Motion for Ruling on the Record ("Opp."), ECF No. 51, at 10-11. Petitioner filed a reply on November 17, 2022. Petitioner's Reply to Respondent's Response to Motion for a Ruling on the Record ("Reply"), ECF No. 52. The matter is ripe for resolution.

II. **Petitioner's Medical Records**

Petitioner received a flu vaccine in his left shoulder on September 17, 2018. Ex. 1 4. On November 9, 2018 (a little less than two months post-vaccination), Petitioner reported to Dr. Alberto Ramirez at the Department of Veterans' Affairs Medical Center that he was experiencing shoulder pain that "still ache[d]" since his September vaccination. Ex. 2 at 497. Petitioner again reported comparable left arm pain on November 14, 2018. *Id* at 496.

Petitioner returned to Dr. Ramirez on November 15, 2018, with reports of eye and shoulder pain. Ex. 2 at 487. He reported left arm pain "for over two months" that started "right after" his flu vaccine. *Id.* at 488.

Three months after, on February 18, 2019, Petitioner saw Michael Klauder, PA, for left arm pain. Ex. 3 at 24. He reported "significant pain" since his September 2018 flu vaccine. An examination showed reduced range of motion, and prednisone was prescribed. *Id.* at 25.

Petitioner completed four physical therapy sessions between February 21 and March 14, 2019. Ex. 4 at 8-24. During the initial assessment, Petitioner reported that the method of injury was a "flu [] shot on 9/17/18." *Id.* at 24. On March 25, 2019, Petitioner returned to P.A. Klauder for left shoulder pain "since immunization…in September." Ex. 3 at 22. He reported his pain had returned after temporary relief he attributed to the prednisone. *Id.*

Petitioner was evaluated by orthopedist Dr. Andrew Mahoney on April 1, 2019. Ex. 3 at 44. Petitioner reported that he had a history of shoulder injuries but was better and had no shoulder pain prior to the flu vaccine. *Id.* Dr. Mahoney stated, however, that he was unable to relate Petitioner's complaints to an anatomic problem, and that his symptoms "would be more consistent with cervical spine radiculopathy" rather than shoulder pathology. *Id.* at 45.

Petitioner returned to P.A. Klauder on April 8, 2019, and was diagnosed with a SIRVA. Ex. 3 at 20. On April 11, 2019, Petitioner underwent an MRI that showed tendinosis, moderate degenerative changes to the acromioclavicular joint, and a possible partial thickness tear of the supraspinatus tendon. Ex. 5 at 4.

On April 25, 2019, Petitioner had a neurologic consultation with Dr. Roderick Anderson. Ex. 6 at 14. He was assessed with left arm weakness, and an EMG/nerve conduction study was suggested. *Id.* at 17.

Petitioner underwent an EMG study on June 12, 2019. Ex. 6 at 20-22. The study was unremarkable but for mild bilateral carpal tunnel syndrome. *Id.* at 22. Notably, there was no "evidence of brachial plexopathy, cervical radiculopathy, or injury to the peripheral nerves. *Id.*

On August 19, 2019, Petitioner was evaluated by orthopedist Dr. Robert Kersey. Ex. 7 at 4. Petitioner reported chronic arm pain and numbness since his September flu immunization. *Id.* Dr. Kersey noted that Petitioner's pain was likely neurologic, and a corticosteroid injection was administered. *Id.* at 6.

Petitioner saw P.A. Paul Zahn, an orthopedist, on October 15, 2020. Ex. 11 at 2-3. Petitioner reported left shoulder pain "since fall in Vietnam," and also attributed his pain to a "SIRVA after a flu shot." *Id.* He was diagnosed with impingement at that time and received a second steroid injection.

A second MRI was performed on November 10, 2020. Ex. 14 at 43-44. It showed a partial thickness tear of the supraspinatus tendon, bursitis, tendinosis. *Id.* at 44. It was also noted that Petitioner had "shoulder pathology as well as severe multilevel cervical NFS on the left. Either of these conditions can explain his symptoms." *Id.*

On January 3, 2021, Petitioner had a cervical spine MRI that showed degenerative changes including stenosis. Ex. 14 at 43. Petitioner was seen for neck pain on April 26, 2021 by Thomas Coury, DO, and was diagnosed with cervical radiculopathy. Ex. 13 at

3

65. Petitioner returned to D.O. Coury on May 10, 2021, for neck and left shoulder pain and underwent trigger point injections. Ex. 13 at 58.

On September 3, 2021, Petitioner saw a pain management specialist. Ex. 14 at 119-20. Petitioner attributed his pain to a SIRVA "after a flu shot" on September 18, 2018. *Id.* at 120. A physical examination noted his neck range of motion was "full without radiculopathy". *Id.*

Petitioner had a telemedicine visit with Dr. Marko Bodor on December 20, 2021, for left shoulder pain "which began 9/17/18 following flu vaccination". Ex. 15 at 8-9. He was assessed with a suspected SIRVA and cervicalgia, among other issues. *Id.* at 9. Dr. Bodor noted in particular, however, that Petitioner's upper extremity numbness and weakness could be the product of separate issues. *Id.* Petitioner saw Dr. Bodor again on February 3, 2022. Diagnosed with suspected SIRVA, partial thickness tear of rotator cuff with tendinopathy and tendinosis, acromioclavicular arthropathy, glenohumeral joint effusion, cervicalgia, and intermittent hand weakness and numbness. *Id.* at 5-6. On February 4, 2022, Petitioner underwent aspiration tenotomy and bone debridement of his left shoulder. Ex. 16 at 1.

Petitioner has submitted two affidavits in support of his claim. The first, dated February 25, 2020 (Ex. 10), states that he had a previous shoulder injury attributed to a motor vehicle accident in 1975 that caused recurring pain in his shoulder blade. *Id.* The second, filed on June 11, 2021 (Ex. 12), detailed his previous shoulder pain in the 1970s, and stated that it "has never fully subsided." *Id.* However, Petitioner added that the medical records "do not properly differentiate between [his] previous back and shoulder blade pain versus [his] new left shoulder muscle injury." *Id.*

### III.   Fact Findings and Ruling on Entitlement

Pursuant to Vaccine Act Section 13(a)(1)(A), a petitioner must prove, by a preponderance of the evidence, the matters required in the petition by Vaccine Act Section 11(c)(1). In addition to requirements concerning the vaccination received, the duration and severity of petitioner's injury, and the lack of other award or settlement,[3] a petitioner must establish that he suffered an injury meeting the Table criteria, in which case causation is presumed, or an injury shown to be caused-in-fact by the vaccination he received. Section 11(c)(1)(C).

---

[3] In summary, a petitioner must establish that he received a vaccine covered by the Program, administered either in the United States and its territories or in another geographical area but qualifying for a limited exception; suffered the residual effects of his injury for more than six months, died from his injury, or underwent a surgical intervention during an inpatient hospitalization; and has not filed a civil suit or collected an award or settlement for his injury.  *See* § 11(c)(1)(A)(B)(D)(E).

The most recent version of the Table, which can be found at 42 C.F.R. § 100.3, identifies the vaccines covered under the Program, the corresponding injuries, and the time period in which the particular injuries must occur after vaccination. Section 14(a). Pursuant to the Vaccine Injury Table, a SIRVA is compensable if it manifests within 48 hours of the administration of an influenza vaccine. 42 C.F.R. § 100.3(a)(XIV)(B). A vaccine recipient shall be considered to have suffered SIRVA if such recipient manifests all of the following:

> (i) No history of pain, inflammation or dysfunction of the affected shoulder prior to intramuscular vaccine administration that would explain the alleged signs, symptoms, examination findings, and/or diagnostic studies occurring after vaccine injection;
>
> (ii) Pain occurs within the specified time frame;
>
> (iii) Pain and reduced range of motion are limited to the shoulder in which the intramuscular vaccine was administered; and
>
> (iv) No other condition or abnormality is present that would explain the patient's symptoms (*e.g.* NCS/EMG or clinical evidence of radiculopathy, brachial neuritis, mononeuropathies, or any other neuropathy).

42 C.F.R. § 100.3(c)(10).

A special master must consider, but is not bound by, any diagnosis, conclusion, judgment, test result, report, or summary concerning the nature, causation, and aggravation of petitioner's injury or illness that is contained in a medical record. Section 13(b)(1). "Medical records, in general, warrant consideration as trustworthy evidence. The records contain information supplied to or by health professionals to facilitate diagnosis and treatment of medical conditions. With proper treatment hanging in the balance, accuracy has an extra premium. These records are also generally contemporaneous to the medical events." *Cucuras v. Sec'y of Health & Hum. Servs.*, 993 F.2d 1525, 1528 (Fed. Cir. 1993).

Accordingly, where medical records are clear, consistent, and complete, they should be afforded substantial weight. *Lowrie v. Sec'y of Health & Hum. Servs.*, No. 03-1585V, 2005 WL 6117475, at *20 (Fed. Cl. Spec. Mstr. Dec. 12, 2005). However, the Federal Circuit has recently "reject[ed] as incorrect the presumption that medical records are always accurate and complete as to all of the patient's physical conditions." *Kirby v.*

*Sec'y of Health & Hum. Servs.*, 997 F.3d 1378, 1383 (Fed. Cir. 2021). Medical professionals may not "accurately record everything" that they observe or may "record only a fraction of all that occurs." *Id.*

Medical records may be outweighed by testimony that is given later in time that is "consistent, clear, cogent, and compelling." *Camery v. Sec'y of Health & Hum. Servs.*, 42 Fed. Cl. 381, 391 (1998) (citing *Blutstein v. Sec'y of Health & Hum. Servs.*, No. 90-2808, 1998 WL 408611, at *5 (Fed. Cl. Spec. Mstr. June 30, 1998). The credibility of the individual offering such testimony must also be determined. *Andreu v. Sec'y of Health & Hum. Servs.*, 569 F.3d 1367, 1379 (Fed. Cir. 2009); *Bradley v. Sec'y of Health & Hum. Servs.*, 991 F.2d 1570, 1575 (Fed. Cir. 1993).

### A. Factual Findings Regarding a Table SIRVA

After a review of the entire record, I find that a preponderance of the evidence demonstrates that Petitioner has satisfied the QAI requirements for a Table SIRVA.

#### 1. Petitioner Had No Prior Left Shoulder Condition or Injury that would Explain his Symptoms

The first requirement for a Table SIRVA is a lack of problems associated with the affected shoulder prior to vaccination that would explain the symptoms experienced after vaccination. 42 C.F.R. § 100.3(c)(10)(i).

There is evidence in this case of prior, shoulder-related concerns. Respondent argues that Petitioner had a "longstanding history of left shoulder pain following a fall in Vietnam and a motor vehicle accident in the 1970's." Opp. at 10. Petitioner himself has reported shoulder pain since the 1970's on a few occasions, significantly prior to the vaccine. *See, e.g.*, Ex. 11 at 3 (reporting left shoulder pain since a fall in Vietnam); Ex. 12 at 1.

However, it is also the case that Petitioner's records consistently attribute his shoulder pain to the flu vaccine. *See, e.g.*, Ex. 3 at 24 (reporting "significant pain" since his September flu vaccine); Ex. 4 at 24 (noting Petitioner's injury was caused by a "flu [] shot on 9/17/18"); Ex. 14 at 120 (attributing Petitioner's shoulder pain to a flu shot on September 18, 2018). And Petitioner has told treaters that his preexisting shoulder injuries were better, and that he had not been experiencing pain from it in the timeframe close to when he received the vaccine at issue. Ex. 3 at 44. Further, there is no evidence that he reported shoulder pain, or received treatment for shoulder problems, for *decades*

6

prior to his 2018 flu vaccine. Thus, the evidence sufficiently preponderates in Petitioner's favor on this Table element to find it is satisfied.

### 2. Onset of Petitioner's Injury Occurred within Forty-Eight Hours of his Vaccination

The medical records also preponderantly establish onset of injury close-in-time to vaccination. Petitioner first sought treatment approximately two months after his vaccination. Ex. 2 at 497. Thereafter, in subsequent treatment records he consistently linked his shoulder pain to the flu vaccine. *See* Ex. 2 at 488; Ex. 4 at 24; Ex. 14 at 120. Accordingly, there is preponderant evidence that establishes the onset of Petitioner's left shoulder pain more likely than not occurred within 48-hours of vaccination.

### 3. Petitioner's Pain was Limited to his Left Shoulder

Petitioner's pain was limited to his left shoulder. Respondent does not contest this aspect of Petitioner's claim, and there is nothing in the records to suggest otherwise.

### 4. Evidence of Another Condition or Abnormality that would Explain Petitioner's Symptoms

The last criteria for a Table SIRVA state that there must be no other condition or abnormality which would explain a petitioner's current symptoms. 42 C.F.R. § 100.3(c)(10)(iv). Respondent argues that Petitioner's shoulder pathology, or his cervical spine pathology, could be causing his symptoms, citing several records from various treaters. Opp. at 11.

As discussed above, Petitioner's prior history includes reports of left shoulder pain following a fall and car accident approximately 45 years prior to his flu vaccination. Ex. 11 at 3, Ex. 12 at 1. However, there is no evidence that Petitioner was receiving treatment for shoulder pain in the previous decades before his vaccination. Accordingly, this prior injury does not rise to the level of an explanatory "condition or abnormality."

Evidence regarding Petitioner's radiculopathy diagnosis presents a much closer call. However, an EMG study from June 12, 2019 (when considered in connection with Petitioner's examination from September 18, 2018, noted no evidence of radiculopathy. Ex. 6 at 22 (EMG study); Ex. 14 at 120 (examination on September 18, 2018). Petitioner's records ALSO show some signs of degenerative changes, including stenosis and cervicalgia, which may have contributed to neck or shoulder pain. However, Petitioner continually attributed his *shoulder* pain to the flu vaccine – it was his primary treatment

7

complaint into the winter of 2019 – and he was affirmatively diagnosed with a SIRVA by at least two medical professionals. Ex. 3 at 20, Ex. 15 at 9. Therefore, while there is record evidence of comorbid conditions, or other *possible* explanations, it does not preponderate over the conclusion that the shoulder pain was vaccine-related.

### B. Other Requirements for Entitlement

In addition to establishing a Table injury, a petitioner must also provide preponderant evidence of the additional requirements of Section 11(c). Respondent does not dispute that Petitioner has satisfied these requirements in this case, and the overall record contains preponderant evidence to fulfill these additional requirements.

The record shows that Petitioner received a Flu vaccine intramuscularly on September 17, 2018, in the United States. Ex. 1 at 4; *see* Section 11(c)(1)(A) (requiring receipt of a covered vaccine); Section 11(c)(1)(B)(i)(I) (requiring administration within the United States or its territories). There is no evidence that Petitioner has collected a civil award for his injury. Ex. 10 at 2; Section 11(c)(1)(E) (lack of prior civil award).

Based upon all of the above, Petitioner has established that he suffered a Table SIRVA. Additionally, he has satisfied all other requirements for compensation. I therefore find that Petitioner is entitled to compensation in this case.

### Conclusion

**In view of the record, I find preponderant evidence that Petitioner satisfies the QAI requirements for a Table SIRVA, and that Petitioner is entitled to compensation.**

**IT IS SO ORDERED.**

<u>s/Brian H. Corcoran</u>
Brian H. Corcoran
Chief Special Master